The Honorable Thomas S. Zilly

CC TO JUDGE   DJ

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP - 3 2002   DJ

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV 02-00861 #00000068

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

LEE McDONALD, DAVID KUNKLE,
VICTOR LEE REVOCABLE TRUST,
EMERALD CELLULAR, a Massachusetts
Corporation, GLOBAL CELLULAR, d/b/a
ARAP II PARTNERS,  OM PARKASH
KALRA, GLADYS BOX, BILLY B  BRITT
PATRICIA BUSCH, H  RICHARD
CHARTER AND EILEEN CHARTER
LIVING TRUST, JOHN COCORES, DAVID
GEORGE EKMAN, RICHARD ERICKSON,
GEORGE R. GORDON, JAMES P.
KENNEDY, HAROLD J. MYERS,
KENNETH L  RAMSEY, HAROLD W
SWART, TERINO GENERAL
PARTNERSHIP, and PIONEERS IN
CELLULAR TECHNOLOGY,

       Plaintiffs,

     v.

WESTERN WIRELESS CORPORATION, a
Washington corporation, BILLINGS
CELLULAR CORPORATION, a Montana
Corporation, WWC MIDLAND
CORPORATION, a Delaware corporation,
WWC HOLDING COMPANY, INC , a
Delaware corporation,
WWC TEXAS LICENSE CORPORATION,
a Delaware corporation, JOHN W
STANTON,  THERESA E. GILLESPIE,

No  C02-861Z

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 1

**ORIGINAL**

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888



1  DONALD GUTHRIE, ALAN R BENDER,
   MIKAL J. THOMSEN, JEFFREY A.
2  CHRISTIANSON, SCOTT HOPPER,
   DAVID MILLER, BOB CHAUDHURI,
3  WARREN LINNEY, JOHN L. BUNCE, JR.,
   MITCHELL R. COHEN, and HELLMAN &
4  FRIEDMAN LLC

5       Defendants

6

7       Plaintiffs by their attorneys and for their complaint against Defendants allege as

8  follows:

9
                          **I. JURISDICTION AND VENUE**
10

11      1.  This Court has subject matter jurisdiction over this dispute under Section 27 of

12  the Securities and Exchange Act of 1934 (the "34 Act"), 15 U.S.C. § 78aa, and principles of

13  pendant jurisdiction.

14      2   Defendants Western Wireless Corporation ("WWC"), Billings Cellular

15  Corporation, WWC Midland Corporation, WWC Holding Company, Inc., WWC Texas

16  License Corporation, transact business in the State of Washington and such entities as well

17  as individual Defendants John W. Stanton, Theresa E. Gillespie, Donald Guthrie, Alan R.

18  Bender, Mikal J. Thomsen, Jeffrey A  Christianson, Scott Hopper and David Miller are

19  found in the State, including in this District.   A substantial part of the events or omissions

20  giving rise to the claims took place in, and substantially all of the communications directed

21  to Plaintiffs during the relevant time period emanated from, the headquarters of WWC and

22  its direct and indirect subsidiaries in King County.

23

24      3.  Venue is proper in this District pursuant to Section 1391 of the Judicial Code,

25  28 U.S.C. S 1391, and Section 27 of the 1934 Act, 15 U.S C. S 78aa.

26

THIRD AMENDED COMPLAINT AND           **YARMUTH WILSDON CALFO PLLC**
DEMAND FOR JURY TRIAL – Page 2        3080 WASHINGTON MUTUAL TOWER
                                      1201 THIRD AVENUE
                                      SEATTLE WASHINGTON 98101 3000
                                      T 206 516 3800  F 206 516 3888

## II. **INTRODUCTION**

4.   This is an action by certain former minority general partners (the "Minority Partners") of Billings Cellular Partnership and Midland Cellular Telephone Company (herein collectively referred to as the "Partnerships").

5.   At all relevant times, the Partnerships and their successor corporations were controlled by WWC and its direct and indirect subsidiaries including Billings Cellular Corporation, WWC Midland Corporation, WWC Holding Company, Inc, and WWC Texas License Corporation, and its direct and indirect subsidiaries (the "WWC Affiliates").

6.   Defendants John W. Stanton, Theresa E Gillespie, Donald Guthrie, Alan R. Bender, Mikal J. Thomsen, Jeffrey A. Christianson, Scott Hopper, David Miller, John L. Bunce, Jr. and Mitchell R. Cohen (the "Officer/Director Defendants") were officers and directors of the WWC and/or the WWC Affiliates during the relevant time period.

7   Defendants John W Stanton, Theresa E. Gillespie, John L. Bunce, Jr, Mitchell R Cohen, and Hellman & Friedman (the "Controlling Person Defendants"), controlled WWC and the WWC Affiliates during the relevant period and participated in the securities fraud and breach of fiduciary duty and tortiously interfered with and induced the breaches of the Partnership Agreements by the WWC Affiliates

8.   Defendants Bob Chaudun and Warren Linney participated in the breach of fiduciary duty by WWC, the WWC Affiliates and the Officer/Director Defendants

9.   As detailed below, the Minority Partners were induced to make significant investments in new ventures in the fledgling wireless industry by the understanding that a partners would share *pro rata*, in the Partnerships' huge upside potential.   The reality was far different.   Instead of sharing the full value of the investment with the Minority Partners,

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

as required by the partnership agreements and the most basic principles of partnership law, the Defendants engaged in a broad scheme to siphon off most of the Minority Partners' value and, ultimately, to freeze the Minority Partners out at unfair prices.

10   The Defendants scheme was complex and multi-layered. First, through various devices, the Defendants obtained control of several wireless operating partnerships, each of which had minority investors.   Second, rather than making pro rata distributions of partnership cash to all partners, as contemplated by the partnership agreements, the Defendants diverted all free cash flow to themselves, labeling the preferential distributions "advances."   Third, the Defendants pledged the Partnerships' assets to secure off-balance sheet loans to entities other than the Partnerships.   Fourth, the upstreamed cash flow and the loan proceeds were used by the Defendants to acquire more local wireless operating companies.   Fifth, the Defendants concealed their scheme from the Minority Partners, as part of an effort to hide the business risks and benefits of their scheme. Sixth, the Defendants combined the various local operating companies to form one of the largest wireless companies in the world -- VoiceStream Wireless Corporation -- and spun it off to the stockholders of WWC while leaving WWC burdened with debt incurred to create VoiceStream.   Seventh, through a series of illegal and inequitable transactions, the Defendants froze the Minority Partners out at unfairly low prices.

11   Although the Plaintiffs unknowingly bore the risk that their interests would be decimated if the Defendants' business plan failed, they received no benefits from the use of the Partnership's cash and other assets   They received no interest in VoiceStream.  In fact, the Defendants went to great lengths to conceal their activities, to create the impression that the Partnerships were worth far less than they are worth, and ultimately, through a complex

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 4

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

series of manipulative and illegal transactions, to freeze out the minority holders at unfairly low values. Unlike the Defendants who received the benefits of the spin-off stock in VoiceStream, Plaintiffs and the minority partners are still subject to the risks of a WWC bankruptcy

12. The total consideration offered to these Plaintiffs in the freeze out mergers described below amounts to approximately $1,670,000. Plaintiffs believe this consideration is grossly inadequate in that among other things it fails to include their share of the value of the VoiceStream assets developed by WWC with the misappropriated assets and diverted funds. At the time Defendants decided to implement the freeze-out mergers on November 15, 2000, the 6,555,411 shares of VoiceStream received by Defendants Stanton and Gillespie in the spin-off had a market value of $781,201,773 and the 12,299,497 shares received by the Hellman & Friedman Entities had a market value of $1,465,718,758

13. Defendants' conduct constitutes a misappropriation of assets of the Partnerships, violations of fiduciary duties owed to the Minority Partners, violations of agreements of fiduciary duties owed to the Minority Partners, violations of agreements governing the Partnerships, violations the federal securities laws, and violations of the Securities Act of Washington. Such acts, among other things, are a default under the various partnership agreements, entitling Plaintiffs to purchase the defaulting partners' interests at book value.

Plaintiffs seek here damages and equitable relief including· rescission of the freeze-out transactions, accountings of the benefits received at the expense of the Partnerships; the imposition of a constructive trust over Defendants' improper gains at the expense of the

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 5

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1  Partnerships; and enforcement of the right to purchase the Defendants' interests at book

2  value.

3

4  ## III.  PARTIES

5

6  ### A.  Plaintiffs

7         14.  Lee E. McDonald is an individual residing in the State of Wyoming   He was a

8  general partner of Billings Cellular Partnership and Midland Cellular Telephone Company

9  until WWC and its affiliates caused them to be illegally converted into corporations at

10  which time he became a minority shareholder in each of the respective successor entities:

11  Billings Cellular Corporation and WWC Texas License Corporation.  Mr  McDonald

12  dissented from the freeze-out mergers of Billings Cellular Corporation and WWC Texas

13  License Corporation and is a party to pending appraisal actions in Montana and Delaware.

14         15.  David Kunkle is an individual residing in the State of Washington.   He was a

15  general partner of Billings Cellular Partnership and Midland Cellular Telephone Company

16  until WWC and its affiliates caused them to be illegally converted into corporations at

17  which time he became a minority shareholder in each of the respective successor entities.

18  Billings Cellular Corporation and WWC Texas License Corporation.  Mr  Kunkle dissented

19  from the freeze-out mergers of Billings Cellular Corporation and WWC Texas License

20  Corporation and is a party to pending appraisal actions in Montana and Delaware.

21         16.  Victor Lee Revocable Trust is a trust existing under the laws of California   The

22  Trust was a general partner of Billings Cellular Partnership until WWC and its affiliates

23  caused it to be illegally converted into a corporation at which time it became a minority

24  shareholder in the successor entity: Billings Cellular Corporation.  The Trust dissented from

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 6

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

the freeze-out merger and is a party to a pending appraisal action commenced by Billings Cellular Corporation in Montana.

17.   Emerald Cellular is a Massachusetts corporation whose principal place is in Massachusetts   It was a general partner of Billings Cellular Partnership until WWC and its affiliates caused it to be illegally converted into a corporation at which time it became a minority shareholder in the successor entity   Billings Cellular Corporation   Emerald Cellular dissented from the freeze-out merger and is a party to a pending appraisal action commenced by Billings Cellular Corporation in Montana.

18. Global Cellular d/b/a ARAP II Partners is a partnership whose principal place of business is in California. It was a general partner of Billings Cellular Partnership until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: Billings Cellular Corporation. Global Cellular dissented from the freeze-out merger and is a party to a pending appraisal action commenced by Billings Cellular Corporation in Montana

19. Om Parkash Kalra is an individual residing in California.   He was a general partner of Billings Cellular Partnership until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: Billings Cellular Corporation.   He dissented from the freeze-out merger and is a party to a pending appraisal action commenced by Billings Cellular Corporation in Montana.

20   Gladys Box is an individual residing in the State of Texas.   She was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time she became a minority

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 7

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

shareholder in the successor entity: WWC Texas License Corporation.   Based on the misrepresentations of the Defendants she accepted the terms of the freeze out merger of WWC Texas License Corporation

21   Billy B. Britt is an individual residing in the State of North Carolina   He was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation    Based on the misrepresentations of the Defendants he accepted the terms of the freeze out merger of WWC Texas License Corporation.

22. Patricia Busch is an individual residing in the State of California   She is the successor to the interests of her husband who was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation.   Based on the misrepresentations of the Defendants she accepted the terms of the freeze out merger of WWC Texas License Corporation.

23. H  Richard Charter and Eileen Charter Living Trust is a formed under and the laws of the State of California for the benefit of persons residing in California   The trust and its predecessor, H. Richard Charter, incorrectly designated as H  Richard Carter, was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time it became a minority shareholder in the successor entity: WWC Texas License Corporation. Based on

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

the misrepresentations of the Defendants, the trust accepted the terms of the freeze out merger of WWC Texas License Corporation

24. John Cocores is an individual residing in the State of California. He was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation. Based on the misrepresentations of the Defendants, he accepted the terms of the freeze out merger of WWC Texas License Corporation.

25. David George Ekman is an individual residing in the State of North Dakota He was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation. He dissented from the freeze out merger and is a party to an appraisal action in Delaware

26. Richard Erickson is an individual residing in the State of California. He was a general partner of WWC Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity. WWC Texas License Corporation He dissented from the freeze out merger and is a party to an appraisal action in Delaware.

27 George R. Gordon is an individual residing in the State of New York. He was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation. He dissented from the freeze out merger and is a party to an appraisal action in Delaware.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28. James P. Kennedy is an individual residing in the State of Maryland.  He was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation.  He dissented from the freeze out merger and is a party to an appraisal action in Delaware.

29.  Harold J. Myers is an individual residing in the State of California.  He was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity· WWC Texas License Corporation.    Based on the misrepresentations of the Defendants he accepted the terms of the freeze out merger of WWC Texas License Corporation

30.  Kenneth L  Ramsey is an individual residing in the State of Kentucky.  He was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity: WWC Texas License Corporation.  He dissented from the freeze out merger and is a party to an appraisal action in Delaware.

31.  Harold W. Swart is an individual residing in the State of Massachusetts  He was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time he became a minority shareholder in the successor entity· WWC Texas License Corporation.  Based on the misrepresentations of the Defendants he accepted the terms of the freeze out merger of WWC Texas License Corporation.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 10

32. Terino General Partnership is a Florida general partnership. This Plaintiff was a general partner of Midland Cellular Telephone Company until WWC and its affiliates caused it to be illegally converted into a corporation at which time this Plaintiff became a minority shareholder in the successor entity: WWC Texas License Corporation. This Plaintiff dissented from the freeze out merger and is a party to an appraisal action in Delaware.

33   Pioneers in Cellular Technology is an association formed by certain of the Plaintiffs to monitor their investments in the Partnerships and, when necessary, to act on behalf of its members to protect that investment.

## B. Defendants

34. Western Wireless Corporation ("WWC") is a Washington corporation organized having its principal place of business at Bellevue, Washington.   WWC was created on July 29, 1994 by a business combination of General Cellular Corporation and MARKETS Cellular Limited Partnership   At all relevant times, through ownership of direct and indirect subsidiaries, WWC and its predecessors owned and controlled the majority general partnership interests in Billings Cellular Partnership and Midland Cellular Telephone Company

35. WWC Holding Company, Inc. ("WWC Holding") is a Delaware Corporation formerly known as PNC of Billings, Inc.  At all relevant times WWC Holding has been a wholly-owned subsidiary of WWC or its predecessors.

36. Billings Cellular Corporation is a Montana corporation formed in 1987   Prior to December 1997 it was a wholly-owned subsidiary of Billings Cellular Partnership.   As

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 11

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

described below, in December 1997, certain of the Defendants wrongfully caused the Partnership to be "converted" into Billings Cellular Corporation. Billings Cellular Partnership and Billings Cellular Corporation are sometimes referred to as the "Billings System".

37  WWC Midland Corporation ("WWC Midland") is a Delaware corporation, formerly known as Midland Cellular Corporation.  Prior to December 8, 1997, WWC Midland was the managing general partner of Midland Cellular Telephone Company, a Delaware general partnership and, upon information and belief, from December 8, 1997 until November 17, 2000, was the controlling general partner of Midland Cellular Telephone Company, L P., a Delaware limited partnership.   WWC Midland is the surviving corporation in the freeze out merger on November 17, 2000.   WWC Midland has been a wholly owned subsidiary of Western Wireless Corporation at all relevant times.

38  Upon information and belief, WWC Texas License Corporation is a Delaware corporation organized in November 2000 by WWC or its direct or indirect subsidiaries for purposes of conversion of the Midland Cellular Telephone Company, L.P.

39. John W. Stanton ("Stanton") was the chief executive officer of WWC, WWC Holdings, Billings Cellular and WWC Midland at all relevant times.  He has been a director, chairman of the board and chief executive officer of WWC and its predecessor, General Cellular Corporation, since 1992.  He has been a director of VoiceStream since February 1998, and its Chief Executive Officer and Chairman since it was formed in 1994.

40. Theresa E. Gillespie ("Gillespie") was an officer of WWC, WWC Holding and WWC Midland and has been an officer or director of the predecessor entities and their operating subsidiaries at all relevant times.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 12

41.  Defendants Stanton and Gillespie are married and, during the relevant time period, shared voting and investment power with respect to 6,245,886 shares of WWC jointly owned by them and various family trusts and other entities owned by them    During 2002, they purchased additional shares of WWC.

42  Donald Guthrie ("Guthrie") was a director of WWC, WWC Holding and Billings Cellular Corporation at the time of the freeze out merger   He is vice chairman of WWC and Vice Chairman of VoiceStream

43. Alan R  Bender ("Bender") was an officer of WWC, WWC Holding and WWC Midland at the time of the "conversion" of the Billings Cellular Partnership and Midland Cellular Telephone Company in 1997 and at other relevant times.   He has been an executive officer of WWC and its predecessors since 1992 and is also an employee of WWC.

44. Mikal J  Thomsen ("Thomsen") was the president of WWC Holding and Billings Cellular Corporation at the time the freeze-out merger was approved   He is the president and chief operating officer of WWC and one of its predecessors since 1991.

45. Jeffrey A. Christianson ("Christianson") is senior vice president and general counsel of WWC and an officer of WWC Midland at certain relevant times.

46. Scott Hopper ("Hopper") was the Director of Corporate Development of WWC and its subsidiaries and a participant in the plan to convert the Billings Cellular Partnership to a corporation and to convert the Midland Cellular Telephone Company to a limited partnership and to a corporation.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1    47. David Miller ("Miller") was the Director of Legal Affairs for WWC and its

2  subsidiaries and was a representative of those entities on the Executive Committee of

3  Billings Cellular Partnership during 1995 and thereafter.

4    48   Bob Chaudhuri ("Chaudhuri"), or entities in which he had a beneficial interest

5  were minority general partners of Billings Cellular Partnership and Midland Cellular

6  Telephone Company   He was the representative of the minority partners on the Executive

7  Committee of the Billings Cellular Partnership during 1995 and for some time thereafter

8  until he caused the interests to be sold to WWC or its affiliates as described below.

9    49   Warren Linney ("Linney") or entities in which he had a beneficial interest were

10  minority general partners in Billings Cellular Partnership and Midland Cellular Telephone

11  Company until he caused the interests to be sold to WWC or its affiliates as described

12  below

13

14

15    50. John L Bunce, Jr. ("Bunce") has been a director of WWC since its formation in

16  July 1994   He was a director of General Cellular Corporation , the predecessor of WWC,

17  from March 1992 to December 1995   He is a managing director of Hellman & Friedman

18  LLC and prior thereto was a general partner of Hellman & Friedman.

19    51. Mitchell R. Cohen ("Cohen" has been a director of WWC since its formation in

20  July 1994   He was a director of General Cellular Corporation, the predecessor of WWC,

21  from March 1992 to December 1995.  Mr Cohen is a managing director of Hellman &

22  Friedman LLC and prior thereto was a general partner of Hellman & Friedman.

23

24    52. Hellman & Friedman LLC is an a San Francisco-based private equity

25  investment firm and is the successor to Hellman & Friedman partnership (collectively

26  referred to as "Hellman & Friedman").  At all relevant times, through various contractual

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 14

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800   F 206 516 3888

and other arrangements Hellman & Friedman, through direct or indirect ownership and voting agreements and arrangements, controlled Hellman Capital Partners II, L.P., Hellman & Freidman Investors, L.P., Hellman & Freidman Investors, Inc. and the Warren Hellman and Tully M. Friedman family trusts (the "Hellman & Friedman Entities").

53  By reason of their direct and indirect stock ownership as well as voting and stockholder agreements among them,  Defendants Stanton, Gillespie, Bunce, Cohen and Hellman & Friedman controlled General Cellular Corporation from 1992 until July 29, 1994, and upon completion of the business combination that created WWC in July 29, 1994 and continuing to the date hereof, controlled WWC and its direct and indirect subsidiaries at all relevant times   As used herein the term "Controlling Person Defendants" means and includes, Defendants Stanton, Gillespie, Bunce, Cohen and Hellman & Friedman.

54. By reason of its stock holdings and the common directors and officers, WWC controls WWC Holding, WWC Midland and its other subsidiaries, including VoiceStream prior to the May 1999 spin-off.

## IV.  **Background and Overview**

55. Billings Cellular Partnership ("Billings Cellular") and Midland Cellular Telephone Company ("Midland Cellular") were early entries into what has become a highly lucrative wireless market. The initial cellular operators were established through an area license bidding process run by the Federal Communications Commission (the "FCC"). Those who held the licenses were obligated to meet certain build-out requirements, with deadlines for stages such as starting construction of the system infrastructure, and the completion of construction.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 15

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

56.   The aftermath of license auctions was often a vibrant market for interests in present and future operators  Licenses would be transferred from player to player.   The construction phase was financed through a combination of equipment vendor loans and capital calls on the participants.   As was the case for Billings Cellular and Midland Cellular, many of the early entrants were organized as general partnerships, a structure that would guarantee each investor the right to a *pro rata* share of all benefits achieved through the investment.   As shown here, that was not the case for Billings Cellular and Midland Cellular, each of which was used to create huge value for the Defendants, without a fair share for the minority partners

A.  **Organization of Billings Partnership**

57. Billings Cellular was formed in September 1987 as a Montana general partnership shortly after the announcement by the FCC that Cellular of Northwest Ohio, Inc  ("CNWO") was to receive the license to build and operate the non-wireline cellular system for the Billings area.  Pursuant to certain agreements among the various bidders and bidding groups, CNWO retained a 50.02% interest and 238 other applicants, including the certain of the Plaintiffs and their predecessors in title, shared the 49.98% interest in the Partnership

58  The Partnership Agreement for Billings Cellular is an investment contract and the interests of the minority partners are securities.   Participation in the Partnership required the investment of money in a common enterprise with the expectation of profits through the efforts of others.  Pursuant to the Partnership Agreement, exclusive authority to manage the partnership was vested in an Executive Committee.  Individual partners had no

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 16

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

right to take any part in the conduct of the Partnership's business and had no right or

authority to act for the Partnership, except as a member of the executive committee or as an

agent or employee of the Partnership. Partnership interests were freely transferable.   By

1992, the amount of capital paid in by the partners amounted to $8,026,500.

59. Billings Cellular through its wholly-owned subsidiary, Billings Cellular

Corporation, operated the cellular system pursuant to the FCC license for the Billings MSA

from inception to the date hereof   Services are marketed under the Cellular One brand

name along with other similarly licensed entities owned by WWC throughout Montana and

other Western states

**B.  Organization of Midland Partnership**

60. Midland Cellular was organized effective March 1, 1990 as the result of a

settlement among 334 applicants for the non-wireline cellular system for the Midland,

Texas area    The person awarded the license by the FCC received a 50 01% interest that he

transferred to Vanguard Cellular Systems, Inc.  The other 333 applicants shared the

remaining 49.99%.

61   The Partnership Agreement for Midland Cellular is an investment contract and

the interests of the minority partners are securities.   Participation in the partnership

required the investment of money in a common enterprise with the expectation of profits

through the efforts of others   Power to conduct the business affairs of the Partnership was

delegated to the Managing General Partner of the Partnership  who could only be removed

by a majority vote of the partners   Partnership interests were freely transferable.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 17

YARMUTH WILSON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800 F 206 516 3888

62. Midland Cellular and its wholly-owned subsidiary, Midland Cellular License Corporation, operated the cellular system pursuant to the FCC license for the Midland MSA from inception to the date hereof. Services are marketed under the Cellular One brand name along with other similarly licensed entities owned by WWC in Texas and other Western states.

## C. Acquisition of Control of Partnerships by The Controlling Person Defendants

63. General Cellular Corporation ("General Cellular"), a predecessor of WWC, was created in 1988 to engage in a series of "roll up" transactions whereby minority owners of cellular systems either sold or exchanged their stock or partnership interests for stock in General Cellular.   After acquiring minority interests in many systems, General Cellular was vulnerable to capital calls and lacked funds to pay its operating costs.  By obtaining control over one or more systems it would be able to divert funds to itself and use the assets as collateral for further borrowings.  One of the first systems over which General Cellular was able to obtain a controlling interest was Midland Cellular Telephone Company   On October 18, 1990, General Cellular acquired a 55.4% majority in interest but failed to disclose to the minority partners its critical need for cash and its dependence on interim financing provided by an equipment supplier

64.  As described in their web site, Defendant Hellman & Friedman, in partnership with Defendant Stanton, took control of General Cellular in July 1991 by causing one or more of the Hellman & Friedman Entities to purchase General Cellular's senior debt at a discount, and, through a prepackaged bankruptcy, converted that position into a majority equity position in the company.   As planned by Defendants Stanton, Bunce, Cohen and

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

Hellman & Friedman, the bankruptcy petition for General Cellular was filed in October

1991 and a plan of reorganization was confirmed in April 1992 as a result of which

Defendants Stanton and Gillespie, and certain of the Hellman & Friedman Entities became

the owners of more than 80% of the stock of General Cellular.   Defendant Stanton became

the Chairman of the Board and Defendant Bender continued as secretary and general

counsel of General Cellular.

65.  After taking control of General Cellular, the Controlling Person Defendants

caused General Cellular to acquire additional minority partnership interests in Midland

Cellular so that by the end of 1991 it owned approximately 81.5% of the partnership.

66.  In December 1992, another entity controlled by Defendant Stanton,

MARKETS Cellular Limited Partnership ("MCLP"), purchased a 63.5% interest in Billings

Cellular and an affiliate, PNC of Billings, Inc , became the majority partner of Billings

Cellular Partnership.

67.  During 1993 and 1994, MCLP purchased additional minority interests in the

Billings Cellular and other similar entities operating in other cities, some of which were

purchased for equity in MCLP.

**D.  Common Scheme to Appropriate and Divert Assets**

68  Upon information and belief, the Controlling Person Defendants and certain of

the Officer/Director Defendants developed a plan to consolidate the majority and minority

interests in various cellular systems controlled by them into a single entity and to

appropriate the assets of the individual cellular systems to procure funds to bid on new PCS

licenses to be auctioned by the FCC.   This plan and the associated risks were not disclosed

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 19

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

1   to the minority partners and affirmative acts were taken to conceal the plan from the

2   minority partners.

3       69   The heart of the plan was the use of the assets of the companies they controlled

4   -- but did not wholly own -- to build their wireless empire. Ultimately, the scheme had

5   several interrelated aspects. First, without any authority to do so, and without regard to

6   their duty of loyalty to the minority partners, the Defendants misappropriated Partnership

7   cash to acquire additional wireless providers, by paying out all available cash flow to the

8   controlling partners in the form of preferential dividends, which they called advances,

9   which were funneled up to General Cellular. Second, without any authority to do so, they

10  pledged the Partnerships' assets to secure loans to General Cellular and later to WWC

11  Third, the Defendants employed the funds generated using the Partnerships' assets to

12  acquire interests in additional wireless companies, thereby expanding their reach Finally,

13  concealing the risks of their financing scheme, and the value eventually created, the

14  Defendants forced the minority investors out at unfair prices. In other words, the

15  Defendants forced the Minority Partners unknowingly to shoulder much of the cost and

16  financial risk of their expansion scheme The Minority Partners and other minority

17  investors, however, received no benefit from the venture.

18      70. Funds were to be procured through credit arrangements whereby the assets of

19  the subsidiaries would be pledged as collateral for loans for bids on the PCS systems and

20  the cash flow from the cellular subsidiaries would be used to support a public offering of

21  the consolidated company.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 20

71.  At no time were the minority interests told about the plan or offered the opportunity to participate in the growth of the assets that their property was being used to create.

72.  The Controlling Person Defendants and the other Officer/Director Defendants intended to squeeze-out the minority interests in the individual cellular systems by depriving them of any distributions or other benefits of ownership so as to induce the minority owners to sell out at unfair and depressed prices while withholding information about the operating results of the systems.   They intended to increase their ownership and convert the entities to corporations so that they could take advantage of short form merger statutes to eliminate the minority owners at a time they felt was advantageous to themselves

**E.  Implementation of Secret Plan**

73. On or about July 29, 1994, the Controlling Person Defendants caused Western Wireless Corporation ("WWC") to be created through a business combination of General Cellular, MCLP and other cellular companies controlled by Defendants Stanton and Gillespie.   As a result of the business combination and a series of related transactions, WWC became the owner of all of the issued and outstanding shares of common stock of General Cellular and the owner of all of the assets of MCLP.  Billings Cellular and Midland Cellular became indirect majority-owned subsidiaries of WWC.

74.  At all relevant times substantially all of WWC's assets and operations were held by or conducted through direct and indirect subsidiaries, including Billings Cellular and Midland Cellular.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 21

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

**(1)  Illegal Pledge of Assets to Purchase and Develop PCS Systems**

75   Simultaneously with the business combination that created WWC,  the Controlling Person Defendants arranged a "Credit Facility" with a banking syndicate administered by Toronto Dominion (Texas) Inc. whereby loans of up to $325 million would be made to WWC to enable it to bid for PCS licenses at upcoming FCC auctions   Despite the facts that WWC owned less than all of the equity of the Partnerships, and that the loans would not be used for the benefit of the Partnerships, WWC used all of the assets of the Partnerships to secure the loans.  The nature and extent of the liens and encumbrances created by the Credit Facility upon the FCC licenses and other assets and the consequential risks to the Partnerships were not disclosed to the minority partners of either Billings Cellular, Midland Cellular or, particularly, the Plaintiffs in this action.

76  Through the FCC auctions, WWC and its affiliates acquired broadband "A Block" and "B Block" personal communications services ("PCS") licenses for six major trading areas with an aggregate population of approximately 15.1 million persons for an aggregate purchase price of $144 million.  The licenses for these areas, Honolulu, Salt Lake City, Portland, Des Moines/Quad Cities, El Paso/Albuquerque and Oklahoma City were transferred to a separate subsidiary, Western PCS Corporation, which later changed its name to VoiceStream Wireless Corporation.

77. In June 1995, WWC and the Toronto-Dominion banking syndicate increased the borrowing limits under the Credit Facility to $750 million to fund the PCS license purchases and build outs which WWC estimated would cost $500 million

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1       78  WWC and its affiliates placed the assets of the Billings and Midland Systems at

2 substantial risk of loss and provided no benefit to the respective minority partners.  The

3 loans outstanding under the Credit Facility amounted to $197 million at December 31, 1994

4 and $347 million at December 31, 1995.  During the period from 1994 through 1996 WWC

5

6 incurred substantial operating losses.  For 1994 and 1995 losses amounted to $26 million

7 and $56 million respectively  During the first quarter of 1996, WWC lost $18 6 million

8 and, at March 31, 1996, had a net tangible book value deficit of $225.7 million and a

9 working capital deficit of $27 million.  For the 1995 year and the first quarter of 1996 it had

10 negative ratios of earnings to fixed charges and earnings coverage deficiencies under its

11 secured loan agreements.

12

13       79   The Credit Facility received a rating of B1 by Moody's Investors Services on

14 May 17, 1996.    A "B" rating is below investment grade and is generally considered

15 "junk "  The rating category as described by Moody's states that bonds "rated B generally

16 lack characteristics of the desirable investment.   Assurance of interest and principal

17 payments or of the maintenance of  other terms of the contract over any long period of time

18 may be small."    While the Credit Facility rating of B1 indicated that it was in the higher

19 end of the generic category, an issue of $200 million of senior subordinated notes in May

20

21 1996, was rated at the lower end of the rating range or "B3."    However under the default

22 provisions of the Credit Facility, a default with respect to the subordinated notes would also

23 constitute a default under the Credit Facility, thereby subjecting the minority partners to a

24 forced liquidation of the assets of the partnership.

25

26

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

80.   As detailed below, WWC and the WWC Affiliates concealed the nature of the security arrangements and the associated risks from the minority partners and failed to obtain their consent to the arrangements.

**(2) Diversion of Cash Flow to Support WWC**

81.   In preparation for its initial public offering in May 1996, WWC used the availability of funds under the Credit Facility to purchase the PCS broadband license for Denver with 4.4 million covered persons for a purchase price of $66 million and pushed to complete the Honolulu system and begin offering service by February 1996

82. In May 1996, WWC issued $200 million of Senior Subordinated Notes due 2006 and 9,014,800 shares of Class A Common Stock    The Controlling Person Defendants owned Class B Common Stock which was entitled to ten votes per share whereas the Class A Common had one vote per share

83   In its initial public offering prospectus dated May 22, 1996, WWC touted its ability to divert cash flow from its more established systems, including the Billings and Midland Systems, to support the operations and debt service payments for the newly acquired and more risky PCS systems   Under the caption "Cellular Operations,"  WWC stated that

> The Company has experienced rapid growth of its cellular operations during the last three years. The number of the Company's cellular subscribers grew to 239,200 at March 31, 1996 from 13,700 at January 1, 1993. Service (subscriber and roamer) revenues grew to $135.1 million in 1995 from $18.4 million in 1993 and operating income (loss) from cellular operations before interest, taxes and depreciation and amortization increased to $28.9 million in 1995 from $0.5 million in 1993.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800   F 206 516 3888

After noting at page 15 of the Prospectus that PCS systems "had no significant operating history in the United States," WWC acknowledged at page 16 that "The Company relies on dividends, loan repayments and other intercompany cash flows from its subsidiaries to generate the funds necessary to meet its debt service obligations." If WWC had not be able to rely on the earnings from the established cellular systems, including Billings Cellular and Midland Cellular it would not have been able to procure sufficient funds to purchase and build out the PCS systems.

84. WWC used the proceeds of the May 1996 public offerings together with borrowings under the Credit Facility to fund its continuing operating losses, capital expenditures and working capital for the build-out of its cellular and PCS systems. Through subsequent auctions, C, D, E and F Block FCC licenses were acquired and/or developed with funds from these sources.

85. After the Billings and Midland Systems began generating positive cash flow and advances from the majority general partner had been repaid, liens and encumbrances on the partnership assets to secure the Credit Facility continued in effect to and including the date hereof for the sole and exclusive benefit of WWC and its affiliates directly, and indirectly for the benefit of the Controlling Person Defendants and the Officer/Director Defendants.

86. Upon information and belief, WWC and its affiliates caused all available cash flow of the Billings and Midland Systems to be diverted to the acquisition and build out of the PCS broadband systems and payment of related debt service. As of December 31, 1998, unsecured advances to the controlling interests by the Billings Cellular Partnership amounted to $9,642,200 and advances by the Midland Cellular Telephone Company

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 25

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

amounted to $4,358,800.  Prior to 1999, distributions to the minority partners were
withheld in an effort to induce them to sell for inadequate consideration.

87.  Upon information and belief, WWC and its affiliates stripped additional assets
from the Billings and Midland Systems by causing them to pay excessive management fees,
by applying unfair methods of allocating home office overhead and by engaging in other
self-dealing transactions.

### (3)  Concealment of Illegal Activities

88.  Upon information and belief, in his capacity as a member of the executive
committee of Billings Cellular in 1995,  Defendant Chauduri became aware of the illegal
scheme to pledge the assets of the Billings Systems for off balance sheet loans under the
Credit Facility and to divert the cash flow to WWC and self-dealing by WWC and its
affiliates.    Defendants Chauduri and Linney joined and acted in concert with the other
Defendants to keep scheme secret so that WWC and its affiliates could continue their
activities    In exchange for their silence, Chauduri and Linney were paid a premium for the
sale of their interests to WWC.

89.  Prior to December 31, 1995, WWC and its affiliates failed to provide any
financial information as to the assets, liabilities or results of operations of the Partnerships.
They concealed the misappropriation of assets and diversion of cash flow by failing to
provide audited financial statements as required by the Partnership Agreements.   In
addition to an accurate and complete depiction of income, expenses, assets and liabilities,
audited financial statements properly prepared in accordance with generally accepted
accounting principles would have disclosed the following material information: (i) the

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 26

existence of and the terms of loans arranged by or made to the controlling interests; (ii) the

existence of and terms of the Credit Facility;  (iii) the amount and terms of management

fees paid to the majority partners or its affiliates, (iii) the basis for allocations of general

and administrative expenses; and (iv) any other transactions with related parties.

**F.  Illegal "conversion" of Partnerships and Misrepresentations**

90. In December 1997, the WWC Affiliates caused the Billings Cellular Partnership

to be "converted" to a corporation for the sole benefit of WWC and its affiliates without the

informed consent of the other partners   Instead of conducting a sale of the Billings System

as required by the partnership agreement and MCA § 35-10-629, WWC Holding caused the

shares of Billings Cellular Corporation to be distributed to the  partners.   WWC Holding

effectively purchased the stock in Billings Cellular Corporation in exchange for its

partnership interest and caused the involuntary sale of the minority partners' interests for

shares in the Billings Cellular Corporation.        This self-dealing transaction caused a

fundamental change in the interests held by Plaintiffs and enabled WWC and the WWC

Affiliates to arrange the freeze-out mergers.

91.  At approximately the same time as the "conversion" of the Billings partnership

in December 1997, WWC and its affiliates ostensibly converted the general partnership

interest of the minority general partners of Midland Cellular Telephone Company into

limited partnership interests without the informed consent of the partners.

**G.  VoiceStream Spin Off**

92  In February 1998 WWC sold a 19 9% interest in VoiceStream and used the

proceeds of the sale for its own purposes as well as the continuing development of the

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 27

**YARMUTH WILSON CALFO PLLC**
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

VoiceStream systems. On May 3, 1999, WWC distributed the remaining 80.1% of VoiceStream to WWC's shareholders, including the Controlling Person Defendants and the other Officer/Director Defendants, who received one share of VoiceStream common stock for each share of WWC common stock owned on April 30, 1999.

93.   According to the Definitive Proxy Solicitation Material filed by WWC with the SEC on or about April 20, 1999, the shares of WWC beneficially-owned by certain of the Defendants as of April 7, 1999 or the ownership of which was attributable to them and the market value of such shares at the time of the freeze-out mergers was as follows

|  | Shares | Market Value |
|---|---|---|
| Defendants Hellman & Friedman, Bunce and Cohen .............   .... | 12,299,497 | $1,465,718,758 |
| Defendants Stanton and Gillespie .. . .. | 6,555,411 | $781,201,773 |
| Defendant Guthrie ...............   . . . | 348,392 | $41,517,526 |
| Defendant Thomsen ....... .   ......... | 573,942 | $68,396,094 |
| Defendant Bender .   .   ......... | 253,242 | $30,178,596 |

On or about May 3, 1999, these Defendants received one share of VoiceStream for each share of WWC owned by them.   None of these benefits were shared with the minority partners.   WWC and the partnerships continued to bear the burden of interest and principal on the Credit Facility, no part of which was assumed by VoiceStream.   As shown above, at the time of the freeze-out mergers the market value of the shares of VoiceStream received by the Defendants identified above amounted to $2,387,012,748.

94. As a result of the spin-off, WWC adjusted the terms of all outstanding stock options including those for Stanton and the other Officer/Director Defendants to give them the benefit of the VoiceStream spin-off but failed to make any comparable arrangement for the minority interests in Billings or Midland companies.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 28

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800   F 206 516 3888

95. If the Controlling Person/Defendants and the other Officer/Director Defendants had offered the minority partners including Plaintiffs the same opportunity they seized for themselves, Plaintiffs would have had an equity participation in WWC beginning in 1994 and would have shared in the distribution of VoiceStream shares.

## H. Illegal Freeze-Outs

96. By letter dated November 15, 2000 and an accompanying Notice of Adoption of Plan of Merger and Notice of Right to Dissent (collectively referred to herein as the "Billings Notice of Merger"), WWC notified the minority stockholders of Billings Cellular Corporation that a merger of the Billings Cellular Corporation into WWC Holding had been approved, that the merger would be effective on or about December 20, 2000 and that all shareholders other than the majority shareholder would be paid $57,831.57 per share in cash for each share or fraction thereof held by the shareholder. According to this valuation and pursuant to MCA § 35-1-838, WWC Holding should have paid the Billings Cellular Plaintiffs $378,253.17 within 60 days after the effective date but has illegally withheld payment. The Billings Notice of Merger contained misrepresentations and omitted to state material facts as detailed below.

97. By letter dated November 16, 2000 and an accompanying Notice of Adoption of Plan of Merger and Notice of Right to Dissent (collectively referred to herein as the "Midland Notice of Merger"), WWC notified the minority partners that the Midland Cellular partnership had been converted to a Texas Corporation. The letter further advised that (i) Midland Cellular partnership had been dissolved by majority vote of the partners, (ii) all of the assets of the partnership had been transferred to a Texas Corporation (WWC

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 29

Texas License Corporation); (iii) the partnership interests had been converted into shares of stock of the Texas corporation, and (iv) that the Texas Corporation had elected to eliminate the minority interests by immediately merging with WWC Midland on terms that provided for payment of $61,628 per share in cash for each newly-issued share of the Texas Corporation   The Billings Notice of Merger contained misrepresentations and omitted to state material facts as detailed below.

## V. MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED PRIOR TO AND AT THE TIME OF THE FREEZE-OUT MERGERS

### A. Misrepresentations in Connection with the Credit Facility

98. On or about April 21, 1995, WWC sent a notice of the annual partnership meeting to the minority partners of the Billings Cellular with an agenda that included a review of 1994 operating results and a budget for 1995.  The notice omitted to disclose that the true purpose of the meeting was to seek ratification of the participation by Billings Cellular in a $750 million Credit Facility

99. According to the minutes of the annual partnership meeting held on May 11, 1995,  the meeting was attended by Defendant Hopper, who chaired the meeting and by three other officers or employees of WWC who were acting within the scope of their employment by WWC and as agents for WWC and its direct and indirect subsidiaries. Defendant Chauduri attended by conference telephone and was the only minority partner present.  A three-person executive committee consisting of Defendants Hopper and Chaudhuri and Dave Miller, Director of Legal Affairs for WWC was elected   During the discussion of the operating results, Defendant Chaudhuri requested that the following information be provided to him.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 30

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1 An estimate of the Partnership's market share
2. A break-out of the roamer in-collect and out-collect costs
3. The number of radios at each cell site.
4. The amount of switch capacity, and the amount allocated to the Partnership.
5. The amounts of loans to partners prior to the acquisition of the market by the current majority partner.
6. A breakdown of the Property, Plant and Equipment.
7 A copy of the partnership agreement.

The next item discussed at the meeting was a the "replacement" credit facility.   Defendant

Hopper was recorded as making the following representations·

1 The assets of the Partnership are pledged as security, as is the case with the current financing.  The terms, and covenants of the replacement facility are more favorable than the current facility's.
2. Economies of scale of the combined Western Wireless Corporation entities enable the Partnership to get more favorable lending terms than they would individually.
3. If a default were to occur, the Partnership would be responsible for the repayment of only those monies loaned by Western Wireless Corporation to the Partnership. If the assets of the Partnership were liquidated as a result of a default, the minority partners would receive their pro rata share of the funds after repayment of debt borrowed by the Partnership.
4. In the case of a default, the bank syndicate would determine which markets to sell in order to cure the default  If the market were to be sold, the indebtedness would be repaid, minority partners would receive their pro rata share of the remaining proceeds; and the majority partners' portion would go to the lender.

Defendant Chaudhuri questioned the risks associated with the facility and requested that an

independent agent evaluate the proposed facility.   Defendant Hopper stated that the

"proposed facility is the product of extensive negotiations and that the time and expense

involved in further evaluation was unwarranted."

100.    The minutes of the May 11, 1995 meeting of the Billings Cellular

Partnership as distributed to the minority partners as some time thereafter were materially

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 31

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

misleading in at least the following respects, as revealed during the investigation by counsel and though discovery in a related state court action:

    a   Although the Credit Facility was described as a "proposed", "replacement" facility, the true facts as subsequently revealed was that the Credit Facility was already being utilized by WWC to the extent of $325 million and the purpose of the meeting was to approve an increase to $750 million;

    b.  The minutes failed to disclose that the purpose of the Credit Facility to allow WWC to bid for and build out the PCS licenses, a purpose wholly unrelated to the business of the partnerships who at the time were generating positive cash flow and were capable of supplying their own capital needs;

    c.  By stating that the minority partners would in any event receive their pro rata share of remaining proceeds, WWC failed to disclose that all of its assets were pledged as security for the Credit Agreement, that it had a negative tangible net worth and did not expect to be generating free cash flow for many years so that the minority partners who would be unsecured creditors would have a negligible chance of any recovery in the event of a foreclosure sale.

    101.   As further revealed through discovery in a related case, several months after the meeting, on August 10, 1995, Defendant Chauduri sent a certified letter to WWC stating that he had not received any of the material promised to him at the Billings Cellular meeting and demanding that the minutes be amended to reflect the fact that he voted <u>against</u> the Credit Facility     Defendant Chauhuri sent similar letters requesting that his vote against the Credit Facility be recorded for similar meetings that took place on May 11, 1995 with

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 32

respect to Midland Cellular and other markets in which he held minority interests   No corrected minutes have ever been distributed to the other minority partners.

102     The discovery documents also revealed that on October 27, 1995, Defendant Chaudhuri sent another certified letter to WWC again demanding the information that he requested at the May 11, 1995 meeting.    Instead of providing him the information, WWC decided to purchase his and Defendant Linney's interests in four markets for more than three times the amount previously offered to minority partners including Defendants Linney and Chaudhuri.    Defendants Chaudhuri and Linney completed the sale of their interests without disclosing any of these facts or their concerns about the Credit Facility to the other minority partners

103.    As revealed through investigation and discovery in a related state case, the minutes omitted to disclose that WWC had granted the lenders under the Credit Facility a security interest without limitation as to amount in the FCC licenses for the Billings System and the Midland Systems.   In particular in connection with the June 1995 amendments to the Credit Facility, WWC entered into a Security Agreement in which it granted a security interest in the FCC licenses for the Billings, Montana and Midland Texas markets.   The Security Agreement described the Collateral as including:

> To the extent permitted by Applicable Law (as defined in the Loan
> Agreement) and subject to Sections 22 and 24 hereof, all franchises,
> Licenses and IOAs, permits and operating rights authorizing or relating to
> the Borrower's rights to operate and maintain a cellular
> telecommunications, personal communication services, or other related
> business including, without limitation, the Licenses and IOAs, all as more

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 33

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1    particularly described on the appropriate portions of Schedule 2 to the Loan

2    Agreement (collectively, the "Licenses") . .

3

4   WWC, as borrower represented and warranted that a valid first priority security interest in

5   the Licenses.

6    The Borrower further represents and warrants that, upon the filing of UCC-1

7    financing statements in the jurisdictions set forth on Exhibit C attached

8    hereto, the Security Interest in the Collateral granted hereunder shall

9
     constitute at all times a valid first priority security interest, perfected with
10

11    respect to all Collateral for which the filing of UCC-1 financing statements is

12    a valid method of perfection, and assuming timely filing of continuation

13    statements, vested in the Administrative Agent (for itself and for the ratable

14    benefit of the Lenders) in and upon the Collateral, free of any Liens except

15    for Permitted Liens  The Borrower shall take or cause to be taken such acts
16
     and actions as shall be necessary or appropriate to assure that the Security
17

18    Interest in the Collateral shall not become subordinate or junior to the

19    security interests, liens or claims of any other Person, and that the Collateral

20    shall not otherwise be or become subject to any Lien, except for Permitted

21    Liens, it being understood that the foregoing shall not obligate the Borrower

22    to file any continuation statements

23

24   By omitting to disclose the effect of these provisions to the minority partners, WWC, the

25   WWC Affiliates,  the Controlling Person Defendants, and the other Officer/Director

26   Defendants induced the minority partners to refrain from asserting their rights under

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 34

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

applicable partnership law to claim a fair allocation of the benefits received by WWC from the Credit Facility.  The minority partners were also denied their opportunity to declare the WWC Affiliates to be in breach of the applicable Partnership Agreements which contained provisions, detailed below, providing that no partner shall "pledge, hypothecate, grant a security interest in, or otherwise encumber its Ownership Interest in the Partnership" except as provided and then only if no encumbrance attaches to the assets of the partnership.

**B. Misrepresentations in Connection with the "Conversion" of the Partnerships**

104.    In connection with the "conversion" of the Billings Cellular Partnership to a corporation,  WWC and the WWC Affiliates, acting under the direction and control of the Officer/Director Defendants  made materially misleading statements of material facts and omitted to provide other material information concerning the "conversion" of the Partnership in their communications with the minority partners of Billings Cellular Partnership  The material misrepresentations and omissions included, among other things, the following:

      a    Represented that the conversion "will not change the ownership of any minority partner," while omitted to disclose the differences between the rights of the minority owners as partners and their rights as shareholders or as limited partners including the availability of a short form merger statute for corporations which is not available to partnerships;

      b.   Represented that the "conversion" was pursuant to the terms of the Partnership Agreement, whereas there was no such provision providing for a "conversion";

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 35

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

   c.   Represented that the conversion would not be used to facilitate a freeze out merger;

   d.   Represented that the Partnership would be dissolved and the assets liquidated while intending to simply distribute shares of the Company;

   e.   Omitted to inform the Partners that under the Partnership Agreement and applicable law they had the right to require that the Billings system be sold to the highest bidder to provide for a cash distribution rather than by receiving payment in kind;

   f.   Represented that a merger of the Company with a temporary entity was a necessary step in the "conversion" but omitted to disclose that this step was taken to simply confuse the process and distract the partners from discovering the fact that in the absence of a provision in the Partnership Agreement authorizing such a maneuver a partnership may not be "converted" to a corporation without the consent of all of the partners, and

   g.   Failed to provide a final accounting for the partnership including any documents to support the allocation of shares of the Company to the partners.

105.   By notice of a partnership meeting dated December 4, 1997, WWC proposed to convert Midland Cellular Telephone Company from a Delaware general partnership to a Delaware limited partnership and to convert the 95% interest owned by WWC's subsidiaries into two parts, an 8% general partner interest to be owned by one subsidiary, and an 87% limited partner interest to be owned by another subsidiary. The memorandum and the letter represented that "there would be no change in the ownership of any minority

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 36

**YARMUTH WILSDON CALFO PLLC**
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

partner "  The explanatory memorandum represented that "interests owned by the various minority partners would be unaffected by this change" and that after splitting the majority interest into two parts, "the remaining partners continue to hold, collectively, a 4.81% general partner interest in the partnership "  Because voting rights and control are important attributes of ownership, the representation that interests would be "unaffected" implied that the Minority Partners would have all the same voting and other rights they held as members of a general partnership.  The fair implication of such a representation is that the Minority Partners would continue as general partners and not as limited partners.

106.    No new or amended partnership agreement has ever been provided to the minority partners of Midland Cellular showing that their interests had been "converted" at any time from general to limited partnership interests.

### C. *Misrepresentations in Connection with the Freeze Out Mergers*

107.    The Billings Notice of Merger contained statements that were false or misleading with respect to material facts, and omitted to state material facts necessary to make the statements made not misleading, as set forth below including, among others, the following

       a    Represented that the value of the shares was based upon a Bond and Pecaro appraisal without providing a copy of the appraisal;

      b.   Omitted to disclose that the Bond and Pecaro valuation used a 60% minority interest discount which was contrary to settled law;

      c.   Omitted to disclose that the Bond and Pecaro report was based on 1999 financial information and was itself out of date;

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 37

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

d.  Omitted to disclose that the Bond & Pecaro report used a commonly applied a measure of value for similar systems known as EBITDA (earnings before interest taxes depreciation and amortization) at a substantially lower multiple than was currently being applied in the market to value shares of WWC;

e   Omitted to disclose other deficiencies in the Bond & Pecaro report such as the assumption of a population growth rate for the Billings area of 0 2% per annum whereas the actual growth rate is many times higher;

f.  Omitted to disclose that Billings Cellular Corporation and its predecessor Billings Cellular Partnership have claims against WWC and its affiliates for misappropriation of assets and failure to account for benefits received from the creation of liens on the assets of the Billings System, including the value of the VoiceStream spin-off shares;

g.  Omitted to disclose interim financial results for the nine months ended September 30, 2000 even though WWC, as a public reporting company is required to issue quarterly statements to its shareholders that include the results of the Billings System;

h   Omitted to provide audited or other footnotes or information as to transactions with WWC and its affiliates which, if provided, would have revealed the extent of the security interest created by the Credit Facility and other self-dealing including switch charges, incollect and outcollect roaming fees; and

i.  Omitted to disclose other material information concerning technological developments that could continue the explosive growth of wireless services.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

108. The Midland Notice of Merger made materially misleading statements and omissions concerning the merger and the business and affairs of WWC Texas License Corporation including, among others, the following

    a. Represented that the value of the shares was based upon a Bond and Pecaro appraisal without providing a copy of the appraisal;

    b. Omitted to disclose that the Bond and Pecaro valuation used a 60% minority interest discount which was contrary to settled law;

    j. Omitted to disclose that the Bond and Pecaro report was based on stale 1999 financial information and was itself out of date,

    k. Omitted to disclose that the Bond and Pecaro report used a commonly applied a measure of value for similar systems, EBITDA, at a substantially lower multiple than was currently being applied in the market to value shares of WWC;

    l. Omitted to disclose that WWC Texas License Corporation and its predecessor Midland Cellular Telephone Company have claims against WWC and its affiliates for misappropriation of assets and failure to account for benefits received from the creation of liens on the assets of the Midland System including the value of the VoiceStream spin-off shares;

    m Omitted to disclose interim financial results even though WWC, as a public reporting company is required to issue quarterly statements to its shareholders that include the results of the Midland System;

    n. Omitted to provide audited or other footnotes or information as to transactions with WWC and the WWC Affiliates which, if provided, would

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 39

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

have revealed the extent of the security interest created by the Credit Facility and other self-dealing including switch charges, incollect and outcollect roaming fees ; and

    o.  Omitted to disclose other material information concerning technological developments that could continue the explosive growth of wireless services.

109.    Upon information and belief, WWC and its affiliates including the Officer Defendants and their disclosed and undisclosed agents and employees from time to time induced other minority partners of Billings Cellular Partnership or Midland Cellular Telephone Company to sell their interests through the concealment of the operating results and financial position of the systems in violation of federal and state securities laws

## VI.  COUNT ONE

**(Fraud in Connection with the Forced Sale of Plaintiffs' Stock in violation of Section 10(b) and Rule 10b-5; against WWC, the WWC Affiliates and the Officer/Director Defendants)**

110    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein

111.    Plaintiffs assert this claim against (i) WWC and its direct or indirect subsidiaries WWC Holding and WWC Midland, and (ii) the Officer/Director Defendants based upon Section 10(b) of the 1943 Act, 15 U.S.C  § 78j(b), and Rule 10b-5 promulgated by the Securities and Exchange Commission.

112.    Plaintiffs further assert claims to recover the consideration paid in the partnership conversion and the freeze out merger, less distributions received, plus costs, and reasonable attorneys' fees, pursuant to applicable state securities laws including Montana

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

(MCA §35-10-307), Washington (RCWA § 21.20.430), and Texas (Tex. Rev Civ. Stat. Ann. Art. 581-33).

113     The ostensible "conversion" of the Billings Cellular Partnership from a general partnership to a corporation in December 1997 involved the sale to and purchase of securities by WWC Holding and its predecessors to several of the Plaintiffs by means of fraud or misrepresentation

114.     The ostensible "conversion" of the Midland Cellular Telephone Company from a general partnership to a limited partnership in December 1997 involved the sale to and purchase of securities by WWC Midland and its predecessors to several of the Plaintiffs by means of fraud or misrepresentation.

115.     The conversion of the Midland Cellular Telephone Company, L.P. from a limited partnership to a corporation in November 2000 involved the sale to and purchase of and sale of securities by WWC Midland and its predecessors to several of the Plaintiffs by means of fraud or misrepresentation.

116.     The freeze out mergers of Billings Cellular Corporation and WWC Texas License Corporation involved the purchase of stock of the Plaintiffs by means of fraud or misrepresentations. As direct and indirect controlling stockholders of the Company, Defendants arranged a short-form merger under Delaware corporate law the effect of which was to force Plaintiffs to accept a cash price for their shares or resort to litigation

## A.  Participation by each of the Defendants in the Securities Fraud

117.     Defendant WWC, the WWC Affiliates and the Officer/Director Defendants (other than Defendants Bunce and Cohen), participated in and materially aided the

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

conversions of the partnerships to corporations and the ensuing forced sale of Plaintiffs' stock through the freeze-out merger and are liable jointly and severally for the return of the consideration paid, costs and reasonable attorneys' fees.

118     At the time of the partnership conversions and the freeze-out mergers, the Officer/Director Defendants were executive officers of Billings Cellular and Midland Cellular as well as of WWC and each of the WWC Affiliates.   Each of them had access to and were intimately familiar with the operations and financial condition of Billings Cellular and Midland Cellular and the transactions leading up to the "conversions" and freeze-out mergers.

119.     Defendant Christianson signed a certificate of conversion of the Midland Cellular Partnership and filed it with the Delaware Secretary of State while acting under the direction and control of WWC and the other Officer/Director Defendants.  He knew or should have known that the conversion had not been approved by all of the general partners, as required by Delaware Law.  Defendant Bender, as an agent and employee of WWC and its affiliates knew or should have known that the application for registration of Midland Cellular Telephone Company, L.P  as a foreign limited partnership in Texas signed by him and filed on February 10, 1998 falsely represented that the limited partnership was validly existing in Delaware.

120.     According to the minutes of the annual meeting of shareholders of Billings Cellular Corporation on October 20, 2000 which were produced by WWC during discovery (Bates No  WW 01321), Defendants Christianson, Gillespie and Guthrie were elected as directors of the corporation and the meeting was chaired by Defendant Hopper.   There is no mention in the minutes of any plans for a merger of the company.   The minutes

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 42

**YARMUTH WILSDON CALFO PLLC**
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

evidence the involvement of Defendants Christianson, Gillespie and Guthrie as directors of

Billings Cellular Corporation in approving the subsequent merger and related documents

121    Following the annual meeting of stockholders, Defendants Christianson,

Gillespie and Guthrie as directors of Billings Cellular Corporation took action to elect

officers of the corporation, effective October 20, 2000, as follows:

| | |
|---|---|
| John W Stanton | Chairman and Chief Executive Officer |
| Mikal J. Thomsen | President and Chief Operating Officer |
| Theresa E. Gillespie | Executive Vice President |
| Donald Guthrie | Vice Chairman |
| Jeffrey A. Christianson | Senior Vice President, General Counsel and Secretary |
| H. Stephen Burdette | Senior Vice President |
| Thorpe "Chip" Kelly, Jr | Senior Vice President |
| Eric Baker | Vice President and Assistant Secretary |
| Angela R. Morrill | Assistant Secretary |
| Scott A. Soley | Chief Accounting Officer |

This action is evidenced by a Consent in Lieu of Meeting of Board Of Directors produced

by WWC during discovery in a related case (Bates No. WW 01320)   These are

substantially the same persons who were identified as corporate officers of Billings Cellular

Corporation in its annual report to the Secretary of State of Montana filed on February 14,

2000   The Officer/Director Defendants named as officers and/or directors in that filing

were Stanton, Bender, Gillespie, Guthrie, and Thomsen.

122.    The involvement of WWC in the freeze out merger of Billings Cellular

Corporation is evidenced by the letter of explanation dated November 15, 2000 announcing

the merger of Billings Cellular Corporation and WWC Holding was sent on the letterhead

of WWC and signed by Defendant Christensen as Secretary of Billings Cellular.    The

letter stated that

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

> WWC, through its parent corporation, Western Wireless Corporation, evaluated the available options to convert these minority shares to cash, and retained a financial consulting firm, Bond & Pecaro, to appraise the value of the minority shares in Billings.
>
> We are pleased to advise you that as a result of this evaluation, WWC has elected to convert all minority shares to cash by of a merger of Billings into WWC.

Defendant Christensen's letter further stated "If you have any questions regarding this matter, please contact Scott Hopper (425-586-8071) or Angela Morrill (425-586-8025)." Defendant Christensen was acting within the scope of his employment and authority as an executive officer and agent of WWC,  WWC Holding and Billings Cellular by sending the letter and participated individually and on behalf of those entities in all actions preceding the sending of the letter and the accompanying Notice of Adoption of Plan of Merger and Notice of Right to Dissent.   The letter evidences knowledge of the merger and participation in the preparation and dissemination of the merger documents by WWC and WWC Holding and the Officer/Director Defendants in the transaction.   It is further direct evidence of the participation and knowledge of the merger and related matters by Defendant Hopper.

123.    Billings transmittal letter The Certificate of Merger of Billings Cellular Corporation into WWC Holding filed with the Montana Secretary of State on December 28, 2000 was signed by Defendants Christensen and Gillespie as Senior Vice President and Executive Vice President, respectively of  Billings Cellular Corporation.

124.    The memorandums describing the conversion of Billings Cellular Partnership and Midland Cellular Telephone Company in December 1997 were prepared by the corporate staff of WWC and Defendant Hopper in his capacity as an agent and employee of WWC and the WWC Affiliates, distributed the memorandums to the minority partners of each of the partnerships.   The Officer/Director Defendants (other than Bunce

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 44

and Cohen) were also officers or directors of Billings Cellular Partnership and Midland Cellular Telephone Company at the time of the "conversions."

## B.  The Individual Defendants' Scienter

125.  As alleged herein, the individual the Officer/Director Defendants participating in the partnership conversions and freeze-out mergers acted with *scienter* in that they knew that the Notices of Merger were materially false and misleading; knew that such Notices of Merger would be issued or disseminated to the minority stockholders; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such Notices of Merger as a primary violations of the federal securities laws.

126  The Officer/Director Defendants acting as agents and employees of WWC and the WWC Affiliates developed an intentional and willful policy of withholding operating and financial information and omitting to disclose related-party transactions as evidenced by (i) the refusal to provide audited financial statements in flagrant disregard of the Partnership Agreements, (ii) the refusals to provide the information requested by Defendant Chaudhuri even after multiple requests and the ultimate decision to pay him and Defendant Linney a premium of several hundred thousand dollars to induce them to breach their fiduciary duty to the Plaintiffs, and (iii) the failure to even attempt to provide complete and accurate disclosures at the time of the freeze-out mergers

127  As set forth elsewhere herein in detail, the Officer/Director Defendants by virtue their participation in the negotiations and completions of the Credit Facility transactions including presentations to rating agencies and investment banking firms over a period of several years knew or should have known that the Credit Facility pledged,

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 45

hypothecated, granted a security interest in, or otherwise encumbered the assets of the

Partnerships and that such facts were not and had not been disclosed to the minority

partners so that they would assert their rights as partners and under the Partnership

Agreements

128.   As alleged herein the Officer/Director Defendants (other than Bunce and

Cohen) were acting as officers and director of Billings Cellular and Midland Cellular at the

time of the dissemination of the Notices of Merger and were acting as officers and

attorneys-in-fact, and for the benefit of WCC and the WWC Affiliates.

129.   Defendants' scienter is further evidenced by the enormous value generated

by the improper liens and encumbrances and diversions of cash flow used to create

VoiceStream   At the time of the freeze-out mergers in November 2000, the shares of

VoiceStream received by Controlling Person Defendants and several other Officer/Director

Defendants had a market value of $2,387,012,748.

**C.  Damages and Causation**

130.   As a result of Defendants misrepresentations and omissions in connection

with the securities transactions involved with the conversion of the partnerships, Plaintiffs

have been damaged by:

> a.  Being prevented from asserting their rights under the Partnership
>
>     Agreements to continue the Partnerships and to repurchase the interests of
>
>     the defaulting majority partners at book value;
>
> b.  Being prevented from asserting their rights to a full and complete accounting
>
>     of all benefits received by WWC, the WWC Affiliates and the Controlling

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 46

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

Person Defendants through the misappropriation and diversion of

partnership assets; and

c. Being deprived of their rights as partners to avoid being forced out of the

partnerships except upon a sale of the system.

131     As a result of the misrepresentations and material omissions, in the Notices

of Merger, the minority partners of Billings Cellular and Midland Cellular were deprived of

the opportunity to make an informed decision concerning whether or not to perfect their

dissenters' rights, to make an informed decision as to the amount that they consider to be a

fair price for their interests, and to otherwise protect their interests.

132     Plaintiffs, McDonald, Kunkle, Victor Lee Revocable Trust, Emerald

Cellular, and Global Cellular Kalra, were deprived of the opportunity to make an informed

decision as to the amount to demand in their appraisal notices for the Billings System.

133.    WWC, the WWC Affiliates and every Officer/ Director Defendant who

participated and materially aided the conversion of the general partnership to a limited

partnership, the sale of stock in exchange for the limited partnership interests of the

Plaintiffs and the cancellation of their shares in the freeze out merger are liable jointly and

severally for the return of the consideration paid or for a determination of the fair value of

their interests reflecting the adjudication of their other claims.

## VII.  COUNT TWO

### (Violation of Section 20(a) of the Exchange Act against the Controlling Person Defendants)

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

134.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

135.    Defendants WWC and its direct and indirect subsidiaries including WWC Holding, Billings Cellular Corporation, WWC Midland, and WWC Texas License Corporation), Stanton, Gillespie, Bunce, Cohen and Hellman & Friedman acted as controlling persons of the Billings Cellular Corporation and WWC Texas License Company within the meaning of § 20(a) of the Exchange Act as alleged herein   By virtue of their positions as excutive officers and directors of WWC, and their ownership and contractual voting rights,  Defendants Stanton, and Gillespie and Bunce and Cohen acting on their own behalf and as agents and representatives of  Hellman & Friedman and the Hellman & Friedman Entities, and their participation in and/or awareness of the operations of Billings Cellular and Midland Cellular and/or intimate knowledge of the false statements in the documents disseminated to the Plaintiffs,  the Controlling Person Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of WWC and the WWC Affiliates, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  Defendants Stanton and Gillespie, in their capacity as officers and directors of the WWC Affiliates,  approved the Notices of Merger and were provided with, or had unlimited access to, copies of the Notices of Merger and to internal management reports, accounting records, financial statements, material contracts and other documents and statements alleged by Plaintiffs to be material to a determination that the Notices of Merger and other documents were misleading prior to and/or shortly after the Notices of Merger were issued and had the

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 48

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

ability to prevent the issuance of the misleading statements or cause the statements to be corrected

## VIII. COUNT THREE

### (Violation of Securities Act of Washington against WWC, the WWC Affiliates, the Controlling Person Defendants and the Officer/Director Defendants)

136.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

137     Plaintiffs assert this claim against WWC, the WWC Affiliates, the Officer/Director Defendants and the Controlling Person Defendants to recover the consideration paid in the partnership conversions and the freeze out mergers, less distributions received, plus costs, and reasonable attorneys' fees, pursuant to the Securities Act of Washington particularly RCW §§ 21.20.010 and 21.20.430.

138.    The ostensible "conversion" of the Billings Cellular Partnership from a general partnership to a corporation in December 1997 involved the sale to and purchase of securities by WWC Holding and its predecessors to several of the Plaintiffs by means of fraud or misrepresentation as alleged above.

139.    The ostensible "conversion" of the Midland Cellular Telephone Company from a general partnership to a limited partnership in December 1997 involved the sale to and purchase of securities by WWC Midland and its predecessors to several of the Plaintiffs by means of fraud or misrepresentation as alleged above.

140.    The conversion of the Midland Cellular Telephone Company, L.P. from a limited partnership to a corporation in November 2000 involved the sale to and purchase of

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 49

1  and sale of securities by WWC Midland and its predecessors to several of the Plaintiffs by

2  means of fraud or misrepresentation as alleged above.

3  141.  The freeze out mergers of Billings Cellular Corporation and WWC Texas

4  License Corporation involved the purchase of securities of the Plaintiffs by means of fraud

5

6  or misrepresentations as alleged above.

7  ## IX.  COUNT FOUR

8  ### (Breach of Partnership Agreements; Tortious Interference)

9  142.  Plaintiffs repeat and reallege each and every allegation contained above as if

10  fully set forth herein.

11  143  WWC Holding and WWC Midland are each bound by the terms of the

12
respective partnership agreements with the same force and effect as if they had signed them

13
at the inception of the respective partnerships  WWC and the other WWC Affiliates, the

14  Officer/Director Defendants and the Controlling Person Defendants caused WWC Holding

15  and WWC Midland to breach their contractual obligations to the Partnerships and to

16  Plaintiffs and tortiously interfered with and prevented the performance of WWC Holding

17  and WWC Midland according to the terms of the Partnership Agreements as detailed

18  below.

19

20

21  ### A.  Breach of Billings Cellular Partnership Agreement

22  144.  The Billings Cellular Partnership Agreement, Section 5.2 as in effect at all

23  relevant times, provides as follows·

24
> The Partnership shall maintain proper books and accounts in accordance
> with generally accepted accounting principles and the provisions of this
> Agreement. Upon the close of each fiscal year, or as otherwise approved by

25

26

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 50

**YARMUTH WILSDON CALFO PLLC**
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1       the Executive Committee, all such books and accounts shall be audited by
2       the Partnership accountants.

3   Section 5.3 of the Partnership Agreement required the financial statements to be mailed to

4   each partner within 120 days of the end of each fiscal year   By failing to provided audited

5   financial statements WWC Holding and its predecessors breached this provision of the

6   Partnership.   WWC, the Controlling Person Defendants and the Officer/Director

7   Defendants induced WWC Holding to breach the Partnership Agreement so that the related

8   party transactions, including the liens and encumbrances to secure the Credit Facility and
9
10  the diversions of cash flow would not be disclosed to the minority partners

11          145     The Billings Cellular Partnership Agreement, Section 6.7 as in effect at all

12  relevant times provides as follows:

13          No Partner shall pledge, hypothecate, grant a security interest in, or
            otherwise encumber its Ownership Interest in the Partnership, unless (i) the
14          Partner gives not less than fifteen (15) days prior written notice to the
            Executive Committee of the creation of the encumbrance, (ii) the
15          encumbrance attaches solely to the subject Ownership Interest, and does not
            attach to any real, personal or intangible property, equipment, or other asset
16          of the Partnership: (iii) the secured party is obligated to comply with
            Sections 6.3, 6.4, 6 5, and 6.6 above in the event it attempts to enforce the
17          encumbrance.
18
19  WWC Holding and its predecessors breached this provision of the Partnership by creating

20  liens and encumbrances that attached to the real, personal and intangible property of the

21  Partnership to secure debts incurred under the Credit Facility for purposes unrelated to the

22  business of the Partnership.   WWC, the Controlling Person Defendants and the

23  Officer/Director Defendants induced WWC Holding to breach this provision of the
24
25  Partnership Agreement so that they could benefit from the creation of the PCS assets and

26  the VoiceStream spin-off without sharing the benefits with the minority partners

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 51

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

146.    The Billings Cellular Partnership Agreement, Section 8.1 as in effect at all

relevant times provides as follows:

> If a Party for any reason breaches any material covenant, representation or
> warranty of this Agreement as contained in Sections 4.10, 6 1-6.7 inclusive,
> 7 1, 10.1, 10.2, and 10.5 hereof, and the breach is not cured with in thirty
> (30) days after written notice of the breach is provided to the defaulting
> Party, then the Party shall be considered to be in material default.

WWC Holding and its predecessors failed to cure the breach of Section 6.7 of the

Partnership Agreement within 30 days after they received actual or constructive notice of

the breach, and are in material default    WWC, the Controlling Person Defendants and the

Officer/Director Defendants induced WWC Holding to conceal the default as long as

possible to so that they could benefit from the creation of the PCS assets and the

VoiceStream spin-off without sharing the benefits with the minority partners.

147    The Billings Cellular Partnership Agreement, Section 8.2 as in effect at all

relevant times provides as follows

> Each Party who commits a material default shall be required to forfeit its
> interest in this Agreement, and subject to any required FCC consent, to
> transfer to the other Partners pro rata its Ownership Interest, if any, for an
> aggregate amount equal to the lesser of (i) the balance of its capital account;
> or (ii) the Partnership book value of its Ownership Interest, as determined in
> accordance with generally accepted accounting Principles.

Section 10.6 of that Agreement further provides as follows:

> Each Party acknowledges that monetary damages for breach of any of the
> provisions of this Agreement would be inadequate  Each Party therefore
> acknowledges that specific performance, temporary and permanent
> injunctive relief, and other appropriate remedies; may be granted to enforce
> such provision without proof of actual damage or the inadequacy of the
> remedy at law

By reason of these provisions, and the other fraudulent and illegal conduct alleged herein,

the freeze out merger and illegal partnership conversion should be rescinded and WWC

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 52

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

Holding should be ordered to tender its interest to the minority partners for purchase in

accordance with these provisions

**B. Breach of the Midland Cellular Partnership Agreement**

148.   The Midland Cellular Partnership Agreement, Section 5.2 as in effect at all

relevant times, provides as follows

> The Partnership shall maintain proper books and accounts in accordance
> with generally accepted accounting principles and the provisions of this
> Agreement. Upon the close of each fiscal year, or as otherwise approved by
> the Managing General Partner, all such books and accounts shall be audited
> by the Partnership's accountants

Section 5 3 of the Partnership Agreement requires the financial statements to be mailed to

each partner within 120 days of the end of each fiscal year.  By failing to provided audited

financial statements WWC Midland and its predecessors breached this provision of the

Partnership.  WWC, the Controlling Person Defendants and the Officer/Director

Defendants induced WWC Midland to breach the Partnership Agreement so that the

related-party transactions, including the liens and encumbrances to secure the Credit

Facility and the diversions of cash flow would not be disclosed to the minority partners

149.   The Midland Cellular Partnership Agreement, Section 6.7 as in effect at all

relevant times provides as follows.

> No Partner shall pledge, hypothecate, grant a security interest in, or
> otherwise encumber its Interest in the Partnership, unless (i) the Partner
> gives not less than fifteen (15) days prior written notice to the Managing
> General Partner of the creation of the encumbrance; (ii) the encumbrance
> attaches solely to the subject Interest, and does not attach to any real,
> personal or intangible property, equipment, or other asset of the Partnership;
> (iii) the secured party is obligated to comply with the provisions of this
> Article VI in the event it attempts to enforce the encumbrance; and (iv) any
> security agreement reflecting such encumbrance complies with the Act and
> the Rules

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 53

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800 F 206 516 3888

WWC Midland and its predecessors breached this provision of the Partnership by creating

liens and encumbrances that attached to the real, personal and intangible property of the

Partnership to secure debts incurred under the Credit Facility for purposes unrelated to the

business of the Partnership.   WWC, the Controlling Person Defendants and the

Officer/Director Defendants induced WWC Midland to breach this provision of the

Partnership Agreement so that they could benefit from the creation of the PCS assets and

the VoiceStream spin-off without sharing the benefits with the minority partners.

150     The Midland Cellular Partnership Agreement, Section 8.1 as in effect at all

relevant times provides in relevant part as follows:

> If a Party for any reason breaches any material covenant, representation or
> warranty of this Agreement, and the breach is not cured within ten (10) days
> after written notice of the breach is provided to the defaulting Party, then the
> Party shall be considered to be in material default.

WWC Midland and its predecessors failed to cure the breach of Section 6.7 of the

Partnership Agreement within 10 days after they received actual or constructive notice of

the breach, and are in material default.   WWC, the Controlling Person Defendants and the

Officer/Director Defendants induced WWC Holding to conceal the default as long as

possible to so that they could benefit from the creation of the PCS assets and the

VoiceStream spin-off without sharing the benefits with the minority partners.

151.    The Midland Cellular Partnership Agreement, Section 8.2 as in effect at all

relevant times provides as follows

> Each Party who commits a material default shall be required to forfeit its
>
> interest in this Agreement, and subject to any required FCC consent, to
>
> transfer to the other Partners pro rata its interest, if any, for an aggregate

amount equal to the lesser of (i) the balance of its capital account; or (ii) the

Partnership book value of its Interest, as determined in accordance with

generally accepted accounting principles.

Section 10.4 of the Midland Partnership Agreement further provides·

> Each Party acknowledges that monetary damages for breach of any of the
> provisions of Articles, I, VI and VII of this Agreement would be inadequate .
> Each Party therefore acknowledges that specific performance, temporary and
> permanent injunctive relief, and other appropriate remedies may be granted
> to enforce such provisions without proof of actual damage or the inadequacy
> of the remedy at law.

By reason of these provisions, and the other fraudulent and illegal conduct alleged herein,

the freeze out merger and illegal partnership conversion should be rescinded and WWC

Midland should be ordered to tender its interest to the minority partners for purchase in

accordance with the foregoing provisions.

152.   WWC Holding and WWC Midland further breached the respective

partnership agreements in the following respects:

     a.  Agreed with the Credit Facility lenders to eliminate or limit distributions of

available cash flow to minority partners;

     b.  Failed to distribute available cash flow to partners as required by the

respective partnership agreements.

     c   Failed to properly wind up the business of the partnership and liquidate the

assets according to applicable partnership law and the respective partnership

agreements.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 55

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1    153.    Specific performance of the Partnership Agreements should be ordered or

2    damages in an amount sufficient to compensate Plaintiffs for the lost opportunity to

3    purchase the majority partner's interests at book value.

4

5                                    **X. COUNT FIVE**

6        **(Breach of fiduciary duty and duty of good faith and fair dealing against all
                                        Defendants.)**

7

8    154    Plaintiffs repeat and reallege each and every allegation contained above as if

9    fully set forth herein.

10    155    As directors and officers of the respective Partnerships and the majority

11    partners, the Officer/Director Defendants owed a fiduciary duty of loyalty and a duty of

12    good faith and fair dealing to the Plaintiffs as partners and as shareholders.

13

14    156    As the majority owners of the Partnerships and the majority partners, WWC

15    and the WWC Affiliates owed a fiduciary duty of loyalty and a duty of good faith and fair

16    dealing to the Plaintiffs as partners and as shareholders.

17    157.    As controlling persons of WWC, the Controlling Person Defendants owed a

18    fiduciary duty of loyalty and a duty of good faith and fair dealing to the Plaintiffs as

19    partners and as shareholders.

20    158    As a member of the Executive Committee of Billings Cellular, Defendant

21
22    Chaudhuri owed a fiduciary duty of loyalty to the minority partners of Billings Cellular.

23    159    WWC and its affiliates and the individual Defendants participated in the

24    misappropriation and conversion of assets of the partnerships and breached their duty of

25    loyalty and of good faith and fair dealing to Plaintiffs in the following respects:

26

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 56

**YARMUTH WILSDON CALFO PLLC**
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

a. Pledged the assets of the Partnerships as security for Credit Facility loans unrelated to the business of the respective partnership for the benefit of WWC and its affiliates, including VoiceStream;

b. Diverted cash flow from the Partnerships without the informed consent of the minority partners through loans for the sole benefit of the majority general partner rather than as pro rata distributions to all the partners;

c. Caused the Partnerships and the majority partners to enter into other transactions with WWC and its affiliates on unfair terms,

d. Concealed and failed to account for all benefits received by them from the business and operation of the partnerships;

e. Dissolved and liquidated the Billings Cellular Partnership in December 1997, and the Midland Cellular Telephone Company in November 2000 without offering the assets for sale and by forcing the minority partners to accept an in-kind distribution of shares of the Company; and

f. Conducted the freeze-out mergers to suit their own purposes on unfair terms and without allowing the Plaintiffs to participate in the continuing growth of the Billings and Midland Systems.

160.    As a direct result of the conduct of WWC, the WWC Affiliates, the Controlling Person Defendants and the other Officer/Director Defendants, Plaintiffs were damaged in an amount to be proved at trial including a fair share of the benefits received by WWC as evidenced by the $2,387,012,748 in market value of VoiceSteam shares held by certain of the Defendants as detailed above.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800   F 206 516 3888

1       161.    As a representative of the minority partners on the Executive Committee of

2  the Billings Partnership, Defendant Chaudhuri owed the minority partners a fiduciary duty.

3       162     Because of Defendants Chaudhuri's position as a member of the Executive

4  Committee of the Billings Partnership, he had access to the undisclosed information about

5  the Partnership's business, finances, credit arrangements, products, markets and present and

6  future business prospects via access to internal partnership documents (including the

7  Company's operating plans, budgets and forecasts and reports of actual operations

8  compared thereto), conversations and connections with other corporate officers and

9  employees, attendance at management and Executive Committee meetings and via reports

10  and other information provided to him in connection therewith   As part of the scheme to

11  conceal the full effect of the Credit Facility and other wrongful transactions with WWC and

12  the WWC Affiliates from the other partners and in breach of his fiduciary duties, instead of

13  disclosing the scheme to the other minority partners, Defendant Chaudhuri sold the

14  partnership interests in which he had a beneficial interest to WWC or the WWC Affiliates

15  at a premium over the price offered to other partners.

16       163.    Upon information and belief, Defendant Chaudhuri disclosed the non-public

17  information to Defendant Linney.  Defendant Linney knew or should have known that

18  Defendant Chaudhuri was participating in a scheme to conceal the nature and extent of the

19  Credit Facility and that Defendant Chaudhuri was breaching his fiduciary duty to the

20  Partnership.

21       164.    Upon information and belief, Defendant Linney used his access to the

22  confidential information which had not been disclosed to the other minority partners to

23  negotiate the sale of all or part of the his personal partnership interests to WWC or the

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 58

1    WWC Affiliates at a premium over the price WWC was offering for partnership interests

2    owned by others.

3

4                                   **XI.  COUNT SIX**

5    **(Common law fraud against WWC, the WWC Affiliates and the Officer/Director**
                                      **Defendants)**
6

7            165     Plaintiffs repeat and reallege each and every allegation contained above as if

8    fully set forth herein.

9            166.    WWC, the WWC Affiliates and the Officer/Director Defendants knowingly,

10   or with reckless disregard for the truth participated in a scheme to cause certain documents

11   to be mailed to Plaintiffs and assertions to be made which included various misleading

12   statements of material facts and/or omissions of material facts necessary in order to make

13   the statements made, in light of the circumstances under which they were made, not

14   misleading   In addition, WWC, the WWC Affiliates and the Officer/Director Defendants

15
16   failed to disclose all facts known to them concerning the purchase and sale of partnership

17   interests and stock which disclosures they were required to perform because of their

18   fiduciary relationship with the Plaintiffs.   The purpose and effect of such conduct was to

19   cause the purchase and sale of partnership interests and stock to be made under

20   circumstances which benefited WWC, the WWC Affiliates, and the Officer/Director

21   Defendants but caused detriment to the Plaintiffs

22
23           167.    In ignorance of the falsity of these misleading statements and the failure of

24   the Defendants to disclose material facts, Plaintiffs were induced to refrain from acting to

25   prevent the liens created by the Credit Facility from continuing, to curtail the diversions of

26

1  cash flow to continue, and to enjoin or seek to set aside the "conversions" of the

2  partnerships and the freeze out mergers.

3       168.   As a direct result of the conduct of WWC, the WWC Affiliates, and the

4  Officer/Director Defendants, Plaintiffs were damaged in an amount to be proved at trial.

5

6                     **XII.  COUNT SEVEN**

7                     **(Rescission of merger)**

8       169   Plaintiffs repeat and reallege each and every allegation contained above as if

9

10  fully set forth herein.

11       170   The freeze out mergers are the product of fraud and illegality within and

12  should be rescinded and declared void.

13

14                    **XIII.  COUNT EIGHT**

15     **(Accounting; Wrongful Dissolution of Partnerships)**

16      171.   Plaintiffs repeat and reallege each and every allegation contained above as if

17  fully set forth herein

18      172.   WWC, the WWC Affiliates and the Officer/Director Defendants caused the

19  Billings and Midland general partnerships to be wrongfully dissolved and liquidated

20  without giving the minority partners the right to continue the partnerships.

21

22      173   As alleged above, neither the Billings nor the Midland Partnership

23  Agreements specify a method of authorizing a conversion of the partnership or a merger or

24  consolidation that involves the partnership as a constituent party.  Conversion of Midland

25  Cellular Telephone Company from a Delaware general partnership to a Delaware limited

26  partnership was not approved by all of the  partners as required by 6 Del.C. § 15-903.

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 60

There is no similar provision for conversion of a Montana general partnership to a corporation

174.    The certificate of limited partnership required to be filed by 6 Del. C. §§ 17-217 and 17-204 was not signed by all of the general partners of Midland Cellular Telephone Company. No limited partnership agreement was ever proposed or approved by all of the minority general partners as required by 6 Del. C. § 17-217(h)  Neither the Billings nor the Midland partnership agreements specify a method of authorizing a conversion of the partnership or a merger or consolidation that involves the partnership as a constituent party. Conversion of Midland Cellular Telephone Company from a Delaware general partnership to a Delaware limited partnership was not approved by all of the  partners as required by 6 Del C. § 15-903. There is no similar provision for conversion of a Montana general partnership to a corporation

175.    Plaintiffs are entitled to the legal and equitable relief under applicable Montana and Delaware partnership laws including the right to continue the Partnerships, to exercise their rights under the Partnership Agreements, including the purchase of the interests of the defaulting partner at book value.

176.    WWC Midland failed to provide a final accounting for the Midland Cellular Telephone Company Partnership including any documents to support the allocation of shares of WWC Texas License Corporation to itself and the other partners.

177    Plaintiffs are entitled to either a continuation of the Partnerships or a dissolution of the respective partnerships by decree of this Court in accordance with applicable Montana and Delaware law.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

## XIV.  COUNT NINE

### (Constructive trust)

178.    Plaintiffs restate and reallege the allegations in paragraphs 1 through 133 as if fully set forth here.

179.    Plaintiffs have the right under the circumstances and in fairness and justice to a constructive trust over those assets that have been wrongfully appropriated by WWC and its affiliates and the individual Defendants from the partnerships and to prevent the unjust enrichment of WWC and its affiliates and controlling shareholders, including Stanton and the other individual Defendants.

180     The proper remedy under a constructive trust in favor of the partnerships is to award Plaintiffs an equity position in WWC and VoiceStream equal to the position they would have had if they had exchanged their interests for stock in WWC at the same time and on similar terms as Stanton and the individual Defendants acquired their interests.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against WWC, the WWC Affiliates, the Controlling Person Defendants and the Officer/Director Defendants, jointly and severally as follows

      a. For an order that the freeze out mergers be rescinded,

      b. For an order that the "conversion" of the partnerships to corporations be rescinded;

      c. For an order enforcing the terms of the Billings Cellular Partnership Agreement and the Midland Cellular Telephone Company Partnership

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 62

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101 3000
T 206 516 3800  F 206 516 3888

Agreement and directing that the interests of WWC Holdings and Midland Cellular Corporation and Midland Cellular Holdings Corporation be transferred to the other partners of the respective partnerships, pro rata, upon payment of the book value of the interests transferred;

d    For an order that an accounting be had of all benefits derived from the use or appropriation of partnerships' property and opportunities of the partnerships without the consent of the other partners;

e.   For an order imposing a constructive trust over any such property or benefits thereby derived, including shares of WWC and VoiceStream;

f    For an order that the Partnerships be dissolved and wound up;

g    For damages,

h.   That the Court award such further and other relief as may be deemed appropriate, and

i    That the Court tax all of the costs of this proceeding, including reasonable attorneys' fees and experts' fees, against WWC Holding, WWC Midland and WWC.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

DATED this 3rd day of September, 2002.

YARMUTH WILSDON CALFO PLLC

By _____
Richard C. Yarmuth

And

John Oitzinger
Attorney at Law
314 N. Main Street
Helena, MT 59601

Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL – Page 64

1

2
## CERTIFICATE OF SERVICE

3

4           I certify that on this date, I caused a true and correct copy of the foregoing

5   document to be served upon counsel of record for defendants herein, as follows:

6   VIA HAND DELIVERY TO:              VIA FIRST CLASS MAIL TO:

7   Evan L. Schwab, Esq.               David C. Dalthorp, Esq.
    Joseph Klein, Esq.                 Gough, Shanahan, Johnson & Waterman
8   Dorsey & Whitney LLP               P. O. Box 1715
    U.S. Bank Building Centre,         Helena, MT 59624
9   1420 Fifth Avenue, Suite 3400
    Seattle, Washington 98101
10

11          I declare under penalty of perjury under the laws of the State of Washington that the

12  foregoing is true and correct.

13          Dated this 3rd day of September, 2002 at Seattle, Washington.

14

15

16                                      Shelley Meyer

17

18

19

20

21

22

23

24

25

26

THIRD AMENDED COMPLAINT AND              YARMUTH WILSDON CALFO PLLC
DEMAND FOR JURY TRIAL – Page 65             3080 WASHINGTON MUTUAL TOWER
                                                  1201 THIRD AVENUE
                                            SEATTLE WASHINGTON 98101 3000
                                            T 206 516 3800  F 206 516 3888

ci034802 9/3/02